**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**LATONIA LEONARD p/n/g**
**P.L., a minor, et al.,**

                         **Plaintiffs,**

                         **v.**

**UNITED STATES OF AMERICA,**

                         **Defendant.**

**7:15-cv-1457**
**(GLS/ATB)**

_____

## SUMMARY ORDER

Pending is defendant United States' motion for summary judgment, (Dkt. No. 51), which seeks dismissal of the negligence claims brought by plaintiff Latonia Leonard on behalf of her minor son, P.L., and herself individually under the Federal Tort Claims Act.[1] (Compl., Dkt. No. 11). For the reasons below, the motion is denied.

It is undisputed that on November 21, 2013, P.L., who was three years old, attended the Chapel Drive Child Development Center (hereinafter "CDC"), a daycare center at Fort Drum, New York. (Def.'s Statement of Material Facts (SMF) ¶¶ 18-19, Dkt. No. 51, Attach. 2.) Also undisputed is that while on the playground, P.L. fell from a slide and injured

---

[1] _See_ 28 U.S.C. §§ 1346(b), 2671-80.

his arm when another child pushed him. (*Id.* ¶ 20.) Plaintiffs' claims are for CDC caregiver staff's negligent supervision of P.L., as well as improper training of that staff. (*Id.* ¶ 2 (citing Compl.).)

The standard of review pursuant to Rule 56 of the Federal Rules of Civil Procedure is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

The parties agree that plaintiffs' negligent supervision claim is governed by *Mirand v. City of New York*, 84 N.Y.2d 44 (1994). (Dkt. No. 51, Attach. 1 at 5; Dkt. No. 56 at 11.) Caregivers have a duty to adequately supervise children in their charge, and they are liable for foreseeable injuries proximately related to the absence of adequate supervision. *See Mirand*, 84 N.Y.2d at 49. Caregivers "are not insurers of safety, however, for they cannot reasonably be expected to continuously supervise and control all movements and activities of [children]; therefore, [they] are not to be held liable for every thoughtless or careless act by which one [child] may injure another." *Id.* (internal quotation marks and citations omitted). "[A] [caregiver] owes it to his [or her] charges to

2

exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances." *Id.* (internal quotation marks and citation omitted).

> In determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow [children], it must be established that [the caregiver]s had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated[.] . . . [O]bviously, [caregivers] cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among [children] daily; an injury caused by the impulsive, unanticipated act of a fellow [child] ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act[.]

*Id.* (internal citations omitted).

Defendant argues that P.L.'s injury was caused by "an accident that occurred because of the spontaneous and unforeseen push by another child," (Dkt. No. 51, Attach. 1 at 2), and plaintiffs cannot prove proximate causation, (*id.* at 11). However, these arguments fail because material factual issues exist. *See Mirand*, 84 N.Y.2d at 51 ("Proximate cause is a question of fact for the [factfinder] where varying inferences are possible[.]") (internal citation omitted). The deposition testimony of Chyrel Green, a CDC caregiver of P.L., (Def.'s SMF ¶ 6; Dkt. No. 51, Attach. 5 at

3

22), creates a dispute as to whether defendant had notice of the danger that injured P.L.  Green testified that, as a playground rule, only one child was to be on the slide at a time.  (Pls.' SMF ¶ 30, Dkt. No. 56, Attach. 5 (citing Dkt. No. 56, Attach. 1 at 151[2]).)  The reason for this rule was to prevent a child from being pushed off the slide.  (Pls.' SMF ¶ 31.)  That is, Green would remove a child violating the rule from the slide and tell them the rule, in order to prevent children from pushing each other.  (Dkt. No. 56, Attach. 1 at 173-74).)  A reasonable factfinder could thus find that defendant could have reasonably anticipated that another child would push P.L. off the slide because defendant had a rule in place to prevent that very behavior.  *See Mirand*, 84 N.Y.2d 44 at 49.

A reasonable factfinder could also find that, despite being aware of the danger, defendant failed to exercise the care of a parent of ordinary prudence in comparable circumstances.  *See id.*  Video footage of the incident depicts Green and another CDC caregiver[3] standing next to each

---

[2] Citations to this document refer to the CM/ECF-generated page number(s).

[3] According to defendant, the other CDC caregiver present was Amber Proctor, who "moved out of the country shortly after the incident at issue and has been unavailable throughout the duration of this litigation." (Dkt. No. 51, Attach. 1 at 2 n.3.)  Plaintiffs seemingly do not dispute this.

other for about four minutes before P.L. fell from the slide. (Pls.' SMF ¶¶ 43-48.)[4] Green was not enforcing the one child at a time rule because she could not visualize the slide from where she was standing. (*Id.* ¶ 32.) Despite being unable to visualize the slide in question prior to P.L.'s injury, Green and the other CDC caregiver did not leave the corner or patrol the playground. (*Id.* ¶¶ 33-34; Dkt. No. 56, Attach. 1 at 275-76.) Moreover, plaintiffs have established that whether Green violated written standards for supervising children is in dispute. (*See* Pls.' SMF ¶¶ 1, 3-4, 6, 12, 14-15; Def.'s SMF ¶¶ 15-16; *see also* Dkt. No. 51, Attach. 10 at 5-17(h) ("During outdoor play, adults will move constantly, interacting with the children and making sure all children are in view.").)[5]

The rest of defendant's arguments as to negligent supervision are

---

(*See generally* Dkt. No. 56; Pls.' SMF.)

[4] The court reviewed the video footage, which is contained on a disk that was submitted by defendant as an exhibit. (Dkt. No. 51, Attach. 6.) Plaintiffs contend that Green and Proctor stood next to each other for about five minutes, (Pls.' SMF ¶¶ 47-48), but the video shows it was about four minutes.

[5] Although defendant posits that the Child, Youth & School Services Parent Handbook, (Dkt. No. 51, Attach. 15), applies only to parents and not CDC employees, (Def.'s SMF ¶ 4), plaintiffs sufficiently deny this fact, (Dkt. No. 56, Attach. 4 ¶ 4).

5

inapposite and/or unavailing. (Dkt. No. 51, Attach. 1 at 6-11.)[6]

As for plaintiffs' negligent training claim, defendant's argument that Green was properly trained seems to have appeal. (*Id.* at 11-13.) It is undisputed that Green "completed and was tested on various training modules" with Child, Youth & School Services (CYS), received her Child Development Associate credential, and "completed different types of training twice per year." (Def.'s SMF ¶ 7.) Also undisputed is that "Green is periodically observed by a CYS trainer who comes into the classroom, observes the caregivers with the children, and provides feedback as to areas that need improvement." (*Id.* ¶ 8.) But defendant can only speculate that CYS annual training "may" include training on supervision, (Dkt. No. 51, Attach. 1 at 11), which is fatal to its argument.[7] Whether Green

---

[6] For example, defendant's argument that plaintiffs' expert failed to establish the appropriate standard of care, (Dkt. No. 51, Attach. 1 at 2-3, 10), is irrelevant here. The relevant standard of care for purposes of this motion is whether defendant acted as a reasonably prudent parent would under comparable circumstances. *See Mirand*, 84 N.Y.2d at 49. Furthermore, to the extent that defendant argues that plaintiffs improperly attempted to create a new factual issue regarding bullying, (Dkt. No. 58 at 1-6), the court need not and does not rely on any of plaintiffs' bullying allegations because the disputed factual issues described above—none of which have anything to do with bullying—preclude summary judgment.

[7] Defendant seemingly assumes that plaintiffs' negligent training claim is governed by the elements of ordinary negligence. (Dkt. No. 51,

6

received any formal training with respect to playground supervision is in dispute, (Dkt. No. 56, Attach. 4 ¶ 10 (citing Attach. 1 at 153)), and thus summary judgment is inappropriate.[8]  *Cf. Grier v. Chu*, No. 10 Civ. 5514, 2012 WL 4108106, at *5 (S.D.N.Y. June 26, 2016) (holding lack of formal training creates material fact issue as to negligence claims).

Accordingly, it is hereby

**ORDERED** that defendant's motion for summary judgment (Dkt. No. 51) is **DENIED**; and it is further

**ORDERED** that the parties shall contact Magistrate Judge Andrew T. Baxter to schedule further proceedings, in light of his March 2, 2017 Text Order (Dkt. No. 43); and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

---

Attach. 1 at 11-13.)  The court does not necessarily agree.  *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004); *Baez v. JetBlue Airways*, 745 F. Supp. 2d 214, 225 (E.D.N.Y. 2010); *Carter v. Port Auth. of N.Y. & N.J.*, No. 03 Civ. 8751, 2004 WL 2978282, at *5 (S.D.N.Y. Dec. 20, 2004).  In any event, for purposes of this motion, an issue of material fact precludes summary judgment.

[8] Defendant's attack on plaintiffs' expert, (Dkt. No. 51, Attach. 1 at 12-13), is inapposite.  Regardless of the sufficiency of his opinion, whether Green received any formal training regarding playground supervision is a material factual issue.  (Dkt. No. 56, Attach. 4 ¶ 10.)

**IT IS SO ORDERED.**

March 15, 2019
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
U.S. District Judge